Affirmed and Memorandum Opinion filed March 23, 2006









Affirmed
and Memorandum Opinion filed March 23, 2006.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00875-CR

____________

 

ROBERT
EUGENE OVERSTREET, Appellant

 

V.

 

THE STATE
OF TEXAS, Appellee

_______________________________________________

 

On Appeal from the 263rd District Court

Harris County, Texas

Trial Court Cause No. 971866

_______________________________________________

 

M E M O R A N D U M   O P I N I O N








Appellant, Robert Eugene
Overstreet, was charged with criminally negligent homicide, enhanced to a third
degree felony upon a deadly weapon finding. 
Appellant pled guilty without an agreed recommendation by the
State.  The trial court sentenced
appellant to five years=
confinement in the Texas Department of Criminal Justice, Institutional
Division.  In seven points of error,
appellant complains (1) his guilty plea is invalid because he did not
understand the nature of the cause and accusation against him, (2) the trial
court erred in failing to sua sponte withdraw his guilty plea, (3) his
conviction is void because the trial court reviewed the presentence
investigation report prior to a finding of guilt, (4) the trial court erred in
assessing punishment as a third degree felony, and (5) his five-year sentence
is cruel and unusual because it is disproportionate to the offense for which he
was convicted.  We affirm.  

Background

According to the presentence
investigation (APSI@) report,
at 5:30 p.m., on August 28, 2003, the complainant, Clifton Floyd Rhodes, Jr.,
was driving a black Mitsubishi pickup truck southbound on the East Sam Houston
Parkway access road, approaching the intersection with Garrett Street at 50 to
55 miles per hour. Appellant, who was driving a white Ford van, approached the
intersection, traveling westbound on Garrett Street.  The traffic signal was green to southbound
traffic on the East Sam Houston Parkway access road.  Rhodes=s pickup
truck entered the intersection where it struck appellant=s
van.  A witness, Clarence Wiles, checked
Rhodes for a pulse, but he felt only a flutter, and then he saw a young child,
Clifton Keyon Rhodes, in a child seat in the truck.

Deputy Brian Wilbanks
reconstructed the accident and determined appellant was traveling at 44 miles
per hour, while Rhodes was traveling at 55 miles per hour.  Urinalysis tests indicated the presence of
cocaine and marijuana, but no alcohol, in appellant=s
system.  However, the investigation could
not quantify the amount of cocaine or marijuana in appellant=s system,
and it could not determine if the presence of those drugs adversely affected
him when the collision occurred.  

In an interview, appellant stated
he had been diagnosed with diabetes and was on a variety of medications for his
diabetes and a number of other conditions. 
Appellant made another statement explaining that he was at home at 1:00
p.m., when he began to feel sick. 
Because he is a type two insulin-dependent diabetic, he check his blood
sugar and found that it was 60, when 100 to 150 is normal.  He drank eight ounces of orange juice to
raise his blood sugar level.  








At 5:00 p.m., appellant decided
to go to the V.A. Hospital.  Appellant,
who was on Garrett Road, stated that he had stopped at the red light of the
southbound lanes of the Beltway in the left turn lane.  Appellant=s stomach
cramped and he knew he was going to be sick. 
Appellant unhooked his seatbelt and opened the door.  Appellant stated that he started to vomit as
he opened the door, and he thinks his foot slipped off the break and onto the
gas pedal.  AI don=t know if
I moved forward or what happened, the next thing I knew is I felt the impact
and I was thrown around in the van.@  

Rhodes died as a result of blunt
force injuries when his vehicle collided with the vehicle driven by
appellant.  Appellant was charged with
criminally negligence homicide by failing to keep a proper look out,
disregarding a traffic control device, and causing his vehicle to collide with
the vehicle driven by Rhodes.  Appellant
was also charged with using a deadly weapon, i.e., the vehicle he was driving.

Voluntary and Knowing Plea

In his first point of error,
appellant complains his guilty plea is constitutionally invalid because the
record shows he did not understand the nature of the cause and accusation
against him in violation of his federal constitutional right to due
process.  The indictment alleged he had
failed to keep a proper lookout and had disregarded a traffic control device;
appellant signed a stipulation of evidence to that effect.  However, Appellant asserts that if his
vehicle, which he claims was stopped at a traffic light, entered the
intersection because his foot slipped off the break when he was sick, he would
not be guilty of criminally negligent homicide as alleged by the State.  








A defendant, who pleads guilty
after having been properly admonished of his constitutional rights, has
knowingly and voluntarily waived those rights, and has been admonished pursuant
to our federal and state constitutions and Article 26.13 of the Texas Code of
Criminal Procedure,[1]
is presumed to have entered a voluntary and knowing plea.  Mitschke v. State, 129 S.W.3d 130, 136
(Tex. Crim. App. 2004).  When the
defendant attests at his original hearing to the voluntary nature of his plea,
he carries a heavy burden at a subsequent hearing to show a lack of
voluntariness.  Cantu v. State,
988 S.W.2d 481, 484 (Tex. App.CHouston
[1st Dist.] 2004, pet. ref=d).  

Appellant entered a waiver of constitutional
rights, agreement to stipulate, and judicial confession in which he stated that
he was waiving the right to a jury trial, the appearance, confrontation, and
cross-examination of witnesses, and his right against self-incrimination.  Appellant=s trial
attorney signed the plea documents, stating he believed appellant had executed
the plea documents knowingly and voluntarily. 
The trial court also signed the plea documents, stating, in relevant
part: 

After I admonished the
defendant of the consequences of his plea, I ascertained that he entered it
knowingly and voluntarily after discussing the case with his attorney.  It appears that the defendant is mentally
competent and the plea is free and voluntary. . . . 

The trial court also gave
appellant written admonishments pursuant to article 26.13(d).  Moreover, in his statements and waivers,
appellant initialed, among other things, that he (1) understood the nature of
the charges against him, (2) understood the admonishments of the trial court,
(3) waived the right to have the trial court orally admonish him, (4) waived
the right to have a court reporter record his plea, (5) understood the
consequences of his plea, and (6) freely, knowingly, and voluntarily executed
the statement in open court.

There is a presumption of
regularity of the judgment and the proceedings, and the burden is on the
defendant to overcome that presumption.  Ex
parte Wilson, 716 S.W.2d 953, 956 (Tex. Crim. App. 1986).  Appellant waived having a court reporter at
his original hearing.  In the absence of
an affirmative showing to the contrary, the foregoing recitation in the
judgment is entitled to a presumption of regularity.  Downs v. State, 137 S.W.2d 837, 840
(Tex. App.CHouston [1st Dist.] 2004, pet.
ref=d) (op. on
reh=g).  Appellant has failed to rebut the presumption
that he understood the charges against him or that his plea was voluntary.  Appellant=s first
issue is overruled.  








Withdrawal of Guilty Plea

In his second point of error,
appellant asserts the trial court erred in failing to sua sponte withdraw his
guilty plea because the record raised an issue as to the voluntariness of his
guilty plea.  When the defendant waives
his right to a jury trial and enters a guilty plea before the court, the court
is not required to withdraw the plea sua sponte, even if the evidence fairly
raises an issue as to the innocence of the defendant.  Moon v. State, 572 S.W.2d 681, 682
(Tex. Crim. App. 1978) (op. on reh=g).  It is within the trial court=s
discretion to order the withdrawal of the plea. 
Id.  AIt is the
duty of the trial court to consider the evidence submitted and as the trier of
the facts the court may find appellant guilty of a lesser offense and assess
the appropriate punishment or it may find the defendant not guilty.@ Id.  

Relying on Payne v. State,
appellant asserts the trial court erred in not permitting him to withdraw his
plea.  790 S.W.2d 649 (Tex. Crim. App.
1990).  In Payne, the defendant
presented evidence during sentencing, after he had entered a guilty plea,
indicating that he was guilty of a lesser-included offense.  Id. at 650B51.  Appellant argues that he raised the issue of
voluntariness of his guilty plea through his statements in the PSI report.  Unlike this case, however, Payne
involved a timely motion by the defendant to withdraw the guilty plea and,
therefore, does not support appellant=s
position.  Id. at 651B52.  We conclude the trial court did not err in
failing to withdraw sua sponte appellant=s guilty
plea.  Appellant=s second
point of error is overruled.  

Review of PSI Report








In his
third and fourth points of error, appellant claims his conviction is void
because the trial court reviewed the PSI report prior to a finding of guilt in
violation of his federal constitutional right to due process of law and his
Texas constitutional right to due course of law.  U.S. Const.
amends. V & XIV; Tex. Const.
art. I, ' 19.  The trial court=s review
of a PSI report prior to a determination of guilt violates the United States
and Texas Constitutions.  State ex
rel. Turner v. McDonald, 676 S.W.2d 375, 379 (Tex. Crim. App. 1984); State
ex rel. Bryan v. McDonald, 662 S.W.2d 5, 7 (Tex. Crim. App. 1983).  The PSI reports in the McDonald cases
were considered by the trial court Aas a
matter of course before a plea [was] even entered.@  Bryan, 662 S.W.2d at 7.  

Appellant entered his plea of
guilty on June 29, 2004.  The trial court
did not make an express finding of guilt at that time and ordered that a PSI
report be prepared.  A PSI report was
filed with the trial court, and on August 20, 2004, a second hearing was held,
at the end of which the trial court entered a formal finding of guilt and
assessed punishment against appellant.  

Appellant asserts the remarks
made by the trial judge reveal that he had read the PSI report prior to the
second hearing.  However, a defendant=s
constitutional rights are not violated where there is no evidence the trial
court considered the PSI report until the defendant had pleaded guilty, signed
a judicial confession, and stipulated to the evidence of guilt.  Baldridge v. State, 77 S.W.3d 890, 892
(Tex. App.CHouston [14th Dist.] 2002, pet.
ref=d); Blalock
v. State, 728 S.W.2d 135, 138 (Tex. App.CHouston
[14th Dist.] 1987, pet. ref=d); Wissinger
v. State, 702 S.W.2d 261, 263 (Tex. App.CHouston
[1st Dist.] 1985, no pet.).  Here, there
is no evidence that the trial court considered the PSI report until after
appellant had pleaded guilty, signed a judicial confession, and stipulated to
evidence of his guilt. AIndeed,
that would have been impossible because the trial court did not order the
presentence report until appellant had pleaded guilty.@  Baldridge, 77 S.W.3d at 892.  Appellant=s third
and fourth points of error are overruled. 


Enhancement on Finding of Deadly Weapon

In his fifth point of error,
appellant contends the trial court erred in assessing punishment as a third
degree felony because the provision of the Texas Penal Code authorizing the
enhancement of a state jail felony to a third degree felony if a deadly weapon
was used or exhibited is inapplicable to the alleged offense of criminally
negligent homicide. 








Criminally negligent homicide is
a state jail felony.  Tex. Pen. Code Ann. ' 19.05(b)
(Vernon 2003).  The punishment for a
state jail felony is confinement in a state jail for not less than 180 days and
not more than two years, and a fine not to exceed $10,000.  Id. ' 12.35(a)
(Vernon 2003).  A state jail felony is
punishable as a third degree felony when it is shown that a deadly weapon was
used or exhibited during the commission of, or during immediate flight
following the commission of, the offense. 
Id. '
12.35(c)(1).  The punishment for a third
degree felony is imprisonment for not less than two years and not more than ten
years, and a fine not to exceed $10,000. 
Id. ' 12.34
(Vernon 2003).  Because the trial court
found appellant had used or exhibited a deadly weapon, his conviction for
criminally negligent homicide was punishable as a third degree felony.  

Appellant argues that inherent in
any homicide offense is the element that a deadly weapon was used or exhibited.  Therefore, according to appellant, section
19.05(a) includes by implication the element that a deadly weapon was used or
exhibited during the commission of the offense. 
Appellant reasons that if section 12.35(c)(1) were applicable to
criminally negligent homicide, it would be applicable in every criminally
negligent homicide case, rendering the punishment scheme under section
19.05(b), i.e., that it is a state jail felony, inapplicable every time.  








Appellant=s
contention is both rational and cogent. 
However, the Legislature has defined a Adeadly
weapon@ as
including Aanything that in the manner of
its use or intended use is capable of causing death or serious bodily injury.@  Tex.
Pen. Code Ann. '
1.07(a)(17) (Vernon 2003).  Thus, the
Texas Court of Criminal Appeals was compelled by logic to hold that Aany
allegation which avers a death was caused by a named weapon or instrument
necessarily includes an allegation that the named weapon or instrument was, >in the
manner of its use . . . capable of causing= (since
it did cause) death.@  Ex parte Beck, 769 S.W.2d 525, 526
(Tex. Crim. App. 1989). 
Yet, by definition, every criminally negligent homicide Acauses
the death of an individual.@  Tex.
Pen. Code Ann. '
19.05.  Thus, as the Fort Worth Court of
Appeals has observed, it Ais
difficult to understand how one could commit a homicide without using an
instrument capable of causing death or serious bodily injury.  Consequently, one wonders how criminally
negligent homicide could ever be punished as a state jail felony.@  Dunn v. State, 176 S.W.3d 880, 884
(Tex. App.CFort
Worth
2005, no pet.).

Notwithstanding the fact that
Section 12.35(c)(1) of the Penal Code seems to render Section 19.05(b) of that
same code nugatory, we are obliged to enforce all constitutional legislative
enactments and conform our opinions to those of the Texas Court of Criminal
Appeals.  In this regard, the Court of
Criminal Appeals has held that the operation of an automobile may constitute
the use of a deadly weapon.  Walker v.
State, 897 S.W.2d 812, 814 (Tex. Crim. App. 1995); Tyra v. State,
897 S.W.2d 796, 799 (Tex. Crim. App. 1995). 
The trial court cannot punish criminally negligent homicide as a state
jail felony when there is an affirmative deadly weapon finding.  Banks v. State, 29 S.W.3d 642, 645
(Tex. App.CHouston [14th Dist.] 2000, pet.
ref=d).  Appellant=s fifth
point of error is overruled. 

Disproportionate Sentence

In his sixth and seventh points
of error, appellant asserts the trial court erred in assessing his punishment
at five years= confinement in violation of his
federal and state constitutional rights against cruel and unusual punishment
because it is disproportionate to the offense for which he was convicted.  U.S. Const.
amends.  VIII & XIV; Tex. Const. art. I, ' 13; Tex. Code Crim. Proc. Ann. art. 1.09
(Vernon 2005).  

Appellant failed to preserve
error by failing to object in the trial court that his punishment was cruel and
unusual.  Curry v. State, 910
S.W.2d 490, 497 (Tex. Crim. App. 1995); Nicholas v. State, 56 S.W.3d
760, 768 (Tex. App.CHouston
[14th Dist.] 2001, pet. ref=d).  However, even if he had preserved error for
appeal, we do not find appellant=s
sentence to be cruel and unusual in violation of either the United States
Constitution or the Texas Constitution.  








Under Texas law, where the
punishment assessed by the judge or jury is within the statutory range, it is
not cruel and unusual within the constitutional prohibition.  Samuel v. State, 477 S.W.2d 611, 614
(Tex. Crim. App. 1972).  Criminally
negligent homicide is a state jail felony. 
Tex. Pen. Code Ann. '
19.05(b).  In this case, there was a
finding of a deadly weapon, elevating the offense to a third degree
felony.  Id. '
12.25(c)(1).  The statutory range for
third degree felony is imprisonment for a term of not less than two years and
not more than ten years, and a fine not to exceed $10,000.  Id. '
12.34.  Appellant was sentenced to five
years=
confinement, which was at the lower end of the statutory range, and was not
assessed a fine.  Appellant=s
sentence is not disproportionate to the offense under Texas law.

            Under
the federal constitution, punishment will be grossly disproportionate only when
an objective comparison of the gravity of the offense against the severity of
the sentence reveals the sentence to be extreme.  Harmelin v. Michigan, 501 U.S. 957,
1005 (1991) (Kennedy, J., plurality op.). 
Again, comparing the gravity of the offense to the severity of the
sentence, we do not find the five-year sentence for the offense of criminally
negligent homicide to be extreme. 
Appellant=s sixth
and seventh issues are overruled.

Accordingly, the judgment of the
trial court is affirmed.  

 

/s/        J. Harvey Hudson

Justice

 

Judgment rendered and Memorandum Opinion filed March 23, 2006.

Panel consists of Justices Hudson, Frost, and Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 











[1]  Tex. Code Crim. Proc. Ann. art. 26.13
(Vernon Supp. 2005).